UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  5/4/2020
```

------------------------------------------------------------------------ X
BROADCAST MUSIC, INC.; RICK'S MUSIC, INC.; RED :
SEA SONGS; HOUSE OF FUN MUSIC, INC.; SPIRIT :
ONE MUSIC, a division of SPIRIT MUSIC GROUP, INC.; :
HOT-CHA MUSIC CO.; UNICHAPPELL MUSIC INC.; :
PWMP ACQUISITION I LLC d/b/a PRIMARY WAVE : 19-CV-1264 (VEC)
BRIAN; MJ PUBLISHING TRUST d/b/a MIJAC MUSIC; :
SONGS OF UNIVERSAL, INC.; ELSIE LOUISE PITTS : ORDER
MUSIC; BUTTERMAN PRODUCTIONS INC. d/b/a :
BUTTERMAN LAND PUBLISHING; WINDSWEPT :
HOLDINGS LLC d/b/a SONGS OF WINDSWEPT :
PACIFIC; and SMOOTH C PUBLISHING, :
                                                                         :
                                            Plaintiffs,                  :
                                                                         :
                       -against-                                         :
                                                                         :
                                                                         :
                                                                         :
                                                                         :
MY IMAGE STUDIOS LLC d/b/a MIST HARLEM;                                  :
CARLTON BROWN; WALTER EDWARDS; and                                       :
AMILCAR PRIESTLEY,                                                       :
                                                                         :
                                            Defendants.                  :
------------------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

Plaintiff Broadcast Music, Inc. ("BMI") is a non-profit organization that licenses the right to publicly perform copyrighted musical works on behalf of the works' owners. BMI appears to have a three-step formula for enforcing those rights: first, make numerous licensing offers through several media; second, send cease-and-desist letters and an investigator to document and record infringements; and, if the first and second steps are not successful, third, sue for injunctive relief and statutory damages. This case is no different.

In February 2019, Plaintiffs sued Defendants for publicly performing six copyrighted works at Defendants' restaurant and lounge located in Harlem, New York. Compl. (Dkt. 6).

Four months later, the Court entered default judgment as to liability against Carlton Brown and Amilcar Priestley, who failed to appear in this action. Order (Dkt. 50). Plaintiffs have now moved for summary judgment on liability against My Image Studios LLC and Walter Edwards and for entry of final judgment against all Defendants. Mot. (Dkt. 53). For the following reasons, Plaintiffs' motion is GRANTED.

## BACKGROUND[1]

BMI occupies a niche in the music industry and copyright. After acquiring public performance rights, it bundles and licenses those rights to music users in the form of "blanket license agreements." Meares Decl. (Dkt. 57) ¶ 2. With such a license, a music user may perform any song in BMI's repertoire. *Id.* BMI owns the public performance rights of the copyright owners-Plaintiffs in this action. *Id.* ¶¶ 4–5 & Ex. A.

Defendants are the proprietors of Mist Harlem—a restaurant, bar, café, theater, and production facility that hosts live and recorded music performances. R. 56.1 Stmt. (Dkt. 55) ¶ 1; Edwards Decl. (Dkt. 62) ¶¶ 1–3. Every week, Mist Harlem hosts a Sunday brunch event to attract customers. Edwards Decl. ¶¶ 7–8. Patrons pay a set price for a buffet and drinks, and a DJ/VJ plays music and videos during brunch. *Id.* ¶ 9.

On December 10, 2017, and April 15, 2018, Defendants played a total of six songs from BMI's repertoire at Mist Harlem's Sunday brunch. Those performances were documented, identified, and recorded by Plaintiffs' investigator, and BMI analyzed his recordings with a proprietary software to identify songs that were played. R. 56.1 Stmt. ¶¶ 8–10. Defendants did not have a license from BMI, but they had a subscription with a commercial music service called "Soundtrack Your Brand." *Id.* ¶ 4; Edwards Decl. ¶ 13. Soundtrack Your Brand provides

---

[1] All facts stated herein are undisputed.

foreground and background music through a digital subscription to accompany activities such as "work, shopping, conversation, dining and relaxation, as long as such music is not offered to commercial subscribers as an accompaniment to dancing or is used by a DJ/VJ." Meares Decl. ¶ 7. Defendants also claim that a third-party promoter, which provided DJ services at the Sunday brunches, had a license to play the six songs through a video music service called "Xtendamix." Pemberton Decl. (Dkt. 64) ¶¶ 2–7.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). Courts must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79–80 (2d Cir. 2009)).

A party opposing summary judgment cannot demonstrate the existence of a genuine question of fact by making "assertions that are conclusory or based on speculation." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (citations omitted); *see also Hicks v. Baines*, 593 F.3d 159, 167 (2d Cir. 2010).

## II.     Infringements

The owner of a copyright has the exclusive right to perform the copyrighted work.  17 U.S.C. § 106(4).  To succeed on their claim, Plaintiffs must prove (1) originality and authorship of the copyrighted works; (2) compliance with the formalities of the Copyright Act; (3) ownership of the copyrights involved; (4) Defendants' public performance of the compositions for profit; and (5) lack of authorization for the public performance.  *Broad. Music, Inc. v. 315 W. 44th St. Rest. Corp.*, No. 93-CV-8082, 1995 WL 408399, at *2 (S.D.N.Y. July 11, 1995).

Plaintiffs have established, and Defendants do not dispute, the first three elements of their claim through the Meares and Lower Declarations and attached documents.  *See* R. 56.1 Stmt. ¶¶ 16–19.  Plaintiffs have also established that the six songs were played for profit at Mist Harlem.[2]  *See id.* ¶¶ 8–10.  The only element that Defendants contest is whether they were authorized to perform the six works.  There is no dispute that BMI did not authorize the performances.  Defendants argue instead that the fact that they were using the Xtendamix and Soundtrack Your Brand ("STYB") services creates a dispute of material fact.  Defs.' Opp. (Dkt. 61) at 5.

Defendants first assert that the third-party service they hired to provide DJs for Mist Harlem's events "maintain[ed] a license with Xtendamix."  *Id.*  Defendants only cited evidence for this assertion is a declaration from one of Mist Harlem's managers.  *See* Pemberton Decl. ¶¶ 2–7.  The Court cannot credit this declaration.  Declarations submitted to support or oppose a

---

[2]     Although Defendants point to Plaintiffs' omission of the song "Holiday" in paragraph 13 of the Flynn Declaration to dispute that "Holiday" was ever performed on April 15, 2018, *see* R. 56.1 Counter Stmt. (Dkt. 65) ¶ 10, the investigator's Certified Infringement Report shows that "Holiday" was played at Mist Harlem on that date, *see* Flynn Decl. (Dkt. 58) ¶ 12 & Ex. B.

Plaintiffs have also established that Defendants played the songs "for profit."  Defendants had a direct financial interest in Mist Harlem, which charged a set price to dine and drink as guests were entertained by a DJ/VJ. R. 56.1 Stmt. ¶¶ 5–6; Edwards Decl. ¶ 9.  That music and entertainment, sometimes "themed" along a decade, genre, or artist, was a selling-point to attract customers.  Edwards Decl. ¶¶ 6–10; *see Broad. Music, Inc. v. JJ Squared Corp.*, No. 11-CV-5140, 2013 WL 6837186, at *5 (E.D.N.Y. Dec. 26, 2013) (finding the "for profit" prong met because the defendant was a "profit-making exercise" and "financially benefited from these performances, which furthered its general business to provide entertainment and refreshments to the public" (quotation omitted)).

motion for summary judgment "must be made on personal knowledge, [and] set out facts that would be admissible in evidence . . . ." Fed. R. Civ. P. 56(c)(4).  When they fail to comply with these requirements, "the offending portions should be disregarded by the court."  *Wahad v. F.B.I.*, 179 F.R.D. 429, 435 (S.D.N.Y. 1998) (citing *United States v. Alessi*, 599 F.2d 513, 514–15 (2d Cir. 1979)); *see also Hicks*, 593 F.3d at 167.  In this case, the manager does not purport to have any personal knowledge of licenses the DJ service—an "outside promoter"—maintained.  Pemberton Decl. ¶ 1.  At best, his declaration consists of inadmissible hearsay.  The mere possibility that an agreement may exist between Xtendamix and the third-party DJ service does not create a genuine dispute of material fact.[3]

Defendants' subscription to the STYB digital service stands on surer footing from an evidentiary perspective, but no reasonable juror could conclude that any of the six songs were performed through that service.  First, Defendants had no STYB license on April 15, 2018; thus, only the two songs performed on December 10, 2017, are even potentially affected by the alleged license.  *See* R. 56.1 Stmt. ¶ 12; Edwards Decl. ¶¶ 13–14 & Ex. A.  BMI's investigator reported that Defendants used two music sources on December 10, 2017: a "computer source" operated by the "Establishment" and a "DJ" identified as "DJ Fragg and DJ E Class."  Flynn Decl. (Dkt. 58) Ex. A.  The investigator's report lists songs played between 1:51 p.m. and 4:07 p.m., first by the computer and then by the DJ.  According to the investigator's report, the DJ's

---

[3] Even assuming Defendants or the third-party DJ service had an Xtendamix license, there is no evidence that such a license would authorize public performances of the works at issue. Defendants argue that Xtendamix is licensed to synchronize music compositions with videos, relying on the Xtendamix website and *In re Application of MobiTV, Inc.*, 712 F. Supp. 2d 206, 216 (S.D.N.Y. 2010), *aff'd sub nom. Am. Soc'y of Composers, Authors & Publishers v. MobiTV, Incorporation*, 681 F.3d 76 (2d Cir. 2012). *See* Defs.' Opp. at 10–13. The Court does not see why synchronization rights matter here. *See MobiTV*, 712 F. Supp. 2d at 216 ("licenses for music videos," although generally including synchronization rights, "do not typically convey the public performance right in the composition embodied in the music video"). Defendants concede that "the difference between public performance rights and sync rights are [sic] readily recognized in the industry"; they are, according to Defendants, "completely different." *Id.* at 10. Further, Xtendamix's own Terms of Service warn users: "You warrant and undertake that you are responsible for all public performance licenses of whatever nature whatsoever arising as a result of your commercial use of the Music Video Goods." Lower Decl. (Dkt. 56) Ex. C.

set began at 3:00 p.m. with the song "I Need You Bad," then "Lay It Down," "Touch My Body," and so on. The investigator recorded songs played by the computer and by the DJs. *Id.*

Because STYB is a digital subscription that does not extend to DJ performances, whether the two songs were played by the computer (which presumably could have been STYB, as Defendants contend) or the DJ is critical. BMI's certified analysis of the investigator's recording identifies the two allegedly infringed-upon songs ("U Remind Me" and "The Way You Make Me Feel") as being among those Defendants played on December 10, 2017. *Id.* Comparing the certified analysis to the investigator's written report yields just one reasonable inference. The certified analysis shows that the songs were played after "Touch My Body"; in other words, after the investigator noted that the DJ was the source of the music. *Id.* Accordingly, only the DJ could have played the two songs at issue. Consequently, Defendants assertion that a genuine dispute exists because it is unclear whether the songs were played using the STYB service on the computer fails. *See* Defs.' Opp. at 8.

### III.     Joint and Several Liability

Under the Copyright Act, a proprietor is liable "for the copyright infringement of musicians whom the proprietor allows to perform in his establishment, even if the proprietor tells the musicians not to play protected works, or is unaware that the songs performed were copyrighted." *315 W. 44th St.*, 1995 WL 408399, at *4 (citations omitted). My Image Studios LLC and Walter Edwards both had the right and ability to supervise the persons employed by Mist Harlem and had a direct financial interest in Mist Harlem when the six songs were played. R. 56.1 Stmt. ¶¶ 5–6. They are therefore both jointly and severally liable for the copyright infringements resulting from the songs performed on the premises.[4] *See Broad. Music, Inc. v.*

---

[4]     They share liability with Defendants Brown and Priestley, against whom the Court entered an Order of Judgment as to Liability on June 21, 2019. (Dkt. 50).

*Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 193–94 (S.D.N.Y. 2016) (holding proprietors jointly and severally liable and collecting cases).

### IV.     Remedy

Plaintiffs seek a permanent injunction, statutory damages, and an award of reasonable attorneys' fees and costs.  Defendants do not oppose any of the requested relief.

Under the Copyright Act, a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  To obtain a permanent injunction, Plaintiffs must show: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Plaintiffs have demonstrated that all four elements favor injunctive relief.  First, it is well-settled that the harm caused by copyright infringements is normally irreparable because "lost sales or diminished reputation can be difficult if not impossible to measure," and this case presents no exception.  *Prana Hosp.*, 158 F. Supp. 3d at 195.  Second, and similarly, remedies at law are inadequate because Defendants are continuing to perform musical works from BMI's repertoire to which Plaintiffs have the exclusive right.  *See* R. 56.1 Stmt. ¶ 15.  Third, the balance of hardships favors Plaintiffs, who will have to pursue time- and resource-intensive litigation each time Defendants infringe their rights if no injunction is entered, and all Defendants must do is comply with their legal obligations.  Fourth, the public interest is served by protecting copyright owners' rights in order to incentive further creative production.  *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012).

Plaintiffs further seek statutory damages pursuant to Section 504(c) in the amount of $20,000 for each of the six copyrights infringed.  To assess statutory damages, a court should consider: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.  *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).  Defendants have at least recklessly disregarded their obligations under copyright law.  Beginning in May 2016, Plaintiffs sent approximately 45 written communications to Defendants, first advising them that they needed a license to perform BMI-licensed works and then demanding that they cease and desist their unauthorized performances.  R. 56.1 Stmt. ¶ 2.  BMI's licensing office also called Mist Harlem 22 times and spoke to Mist Harlem employees on several occasions.  *Id.* ¶ 3.  Underscoring their culpable state of mind, Defendants have missed several discovery deadlines and have continued to host musical performances through the course of this litigation.  *See id.* ¶ 15; Lower Decl. (Dkt. 56) ¶¶ 2–5.  Plaintiffs' requested amount of statutory damages is also warranted because it totals less than three times the amount of licensing fees they would have received had Defendants obtained a BMI license.  *See* Flynn Decl. ¶ 20; *see, e.g.*, *Prana Hosp.*, 158 F. Supp. 3d at 199 ("Second Circuit case law—including numerous cases brought by BMI—reflects that courts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid."); *Broad. Music, Inc. v. Bayside Boys, Inc.*, No. 12-CV-3717, 2013 WL 5352599, at *6 (E.D.N.Y. Sept. 23, 2013) (awarding "five times the cost of the licensing agreement").

For similar reasons, the Court will also award Plaintiffs reasonable attorneys' fees and costs.  A court "may allow the recovery of full costs by or against any party" and "may also

award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Such awards are common in copyright infringement cases and are likewise warranted here. Defendants obstinately disregarded Plaintiffs' rights even as Plaintiffs diligently pursued those rights long before commencing this litigation. *See, e.g.*, *Broad. Music, Inc. v. Pamdh Enters., Inc.*, No. 13-CV-2255, 2014 WL 2781846, at *5 (S.D.N.Y. June 19, 2014) (awarding attorneys' fees and costs). Plaintiffs and Defendants must meet and confer regarding the amount of fees and costs incurred in this case in an attempt to reach a stipulation as to attorneys' fees and costs. If the parties cannot reach an agreement, Plaintiffs must submit documentation demonstrating their fees and costs.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for summary judgment is GRANTED. Defendants, their agents, employees, and all persons acting under their permission or authority are permanently enjoined from infringing, in any manner, the copyrighted musical compositions licensed by BMI. Plaintiffs shall recover from Defendants My Image Studios LLC d/b/a Mist Harlem, Carlton Brown, Walter Edwards, and Amilcar Priestley, jointly and severally, statutory damages in the amount of $20,000 for each of the six musical compositions infringed, for a total of $120,000. Plaintiffs shall recover from Defendants My Image Studios LLC d/b/a Mist Harlem, Carlton Brown, Walter Edwards, and Amilcar Priestley, jointly and severally, reasonable attorneys' fees and costs in this action, which are to be proven by a stipulation between the parties or, if the parties are unable to reach an agreement on this issue, certification of counsel, to be filed no later than **June 1, 2020**, with appropriate backup documentation. Plaintiffs shall recover from Defendants My Image Studios LLC d/b/a Mist Harlem, Carlton Brown, Walter Edwards, and Amilcar Priestley, jointly and severally, interest on the full amount of this judgment, from the date of entry of final judgment, pursuant to 28 U.S.C. § 1961. The

Court will defer entering final judgment until the Court has determined the amount of attorneys' fees and costs to which Plaintiffs are entitled.

**SO ORDERED.**

**Date:  May 4, 2020**             **VALERIE CAPRONI**
**         New York, NY**                    **United States District Judge**